[No. 11403. Department One. January 2, 1914.]

SCHANEN-BLAIR COMPANY MARBLE & GRANITE WORKS,
*Plaintiff*, v. SISTERS OF CHARITY OF THE HOUSE
OF PROVIDENCE *etc. et al., Defendants,*
O. E. HEINTZ *et al., Interveners.*

O. E. HEINTZ, *Appellant*, v. SISTERS OF CHARITY OF THE
HOUSE OF PROVIDENCE *etc., Respondent.*[1]

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—SUPERVISING ARCHITECT—EVIDENCE—SUFFICIENCY. An owner having contracted with the principal contractor for all the work for the construction of a building, is not liable to a subcontractor, who, with notice of the principal contractor's default, failed to perfect his lien, but continued in the performance of his subcontract in reliance upon the statement of the supervising architect, in charge of the work, that the owner was holding up sufficient money to pay all subcontractors, and directing him to go ahead, in the absence of any evidence that the architect was authorized to bind the owner beyond the terms of the original contract, or that notice of his statement was brought home to the owner; since the architect has no implied authority to bind the owner beyond the terms of the contract.

Appeal from a judgment of the superior court for Clarke county, McMaster, J., entered January 2, 1913, dismissing an action to foreclose a mechanics' lien, upon granting a nonsuit. Affirmed.

*E. V. Littlefield* and *Huntington & Wilson*, for appellant.

*Conner & Akins* and *Miller, Crass & Wilkinson*, for respondent.

[1] Reported in 137 Pac. 468.

CHADWICK, J.—The appellant, O. E. Heintz, brought an action to foreclose a subcontractor's lien upon a certain building, constructed at Vancouver, Washington, by the respondent, Sisters of Charity of the House of Providence, a corporation. The principal contractors, Moore and Hardin, defaulted while the work was going on. Appellant performed his contract and filed a lien for the balance of the amount due him under the contract. It appeared upon the trial that plaintiff had not given the notice required by statute, and for that reason his lien failed, under the authority of the following cases: *Hallett v. Phillips,* 73 Wash. 457, 132 Pac. 51; *Finlay v. Tagholm,* 62 Wash. 341, 113 Pac. 1083. Appellant has not appealed from this ruling of the court, but does insist that he is entitled to a personal judgment against the corporation, Sisters of Charity of the House of Providence, under Rem. & Bal. Code, § 1141 (P. C. 309 § 77), and the following cases: *Peterson v. Dillon,* 27 Wash. 78, 67 Pac. 397; *Pacific Iron & Steel Works v. Goerig,* 55 Wash. 149, 104 Pac. 151; *Dolan v. Cain,* 59 Wash. 259, 109 Pac. 1009; *Architectural Decorating Co. v. Nicklason,* 66 Wash. 198, 119 Pac. 177.

The right to recover is based upon the testimony of appellant, who says:

"I got one payment from Moore & Hardin in May, 1910, and we didn't receive any more so that in the Fall of that same year the architect called me up and asked me why we didn't deliver the balance of the iron work, I remember particularly what he referred to, the window gratings and the area gratings around the building, and I told him I had heard Moore & Hardin were in financial distress and I didn't know whether to go ahead, and he said 'I am holding back enough money to protect the sub-contractors,' he said $20,-000 he was holding back, that was along in December, the last part, I think, or some time during the month of December. Q. He said he was holding back $20,000 to protect the sub-contractors? A. Yes, he said he was holding back $20,000 to protect the sub-contractors. Q. State

9—77 WASH.

whether or not he requested you to go ahead. A. Yes, he said 'Go ahead and finish the work,' and he was holding back that amount of money to protect us. Q. And did you go ahead on the strength of that? A. Yes, we went ahead on the strength of that;"

and the testimony of two other subcontractors, who testified to the same circumstance, one of them saying:

Q. "Did you ever have any contract with the architects, or either of them, or with Sister John, with regard to your continuing the work? . . . A. I don't know what you would call a contract; I had a conversation with them in regard to continuing work, in fact, I intended to quit work because I couldn't get any money to carry it on and I spoke to the Sisters and to the architect in regard to it, to carrying on the work, and they told me to go ahead, that all contracts and sub-contracts would be paid in full."

A judgment of nonsuit was entered upon the motion of the defendant, the Sisters of Charity of the House of Providence. The court below held, and we believe properly, that the showing was wholly insufficient to hold the respondent to an original promise. It had contracted for all the work, and appellant had become a subcontractor, having within his power and within his means remedies to protect himself and secure the payment of his demand. He had notice of the default of the principal contractors, and if he had intended to rely upon a contract with the respondent, it would seem that he would have contracted with it direct rather than continue and rely upon his lien as he did, even up to the time of trial.

The authority of an architect is not absolute. He is bound by the general rules of agency. It is nowhere made to appear in the record that the architect had any authority to bind the respondent beyond the terms of its contract with the principal contractors.

"The mere fact that a person is employed as an architect does not constitute such person a general agent of his employer, his powers as agent being limited by the contract entered into between them. Thus, unless specially authorized, he is not entitled to change, alter, or modify the contract

entered into by the builder and his employer; nor has he any authority to bind the owner by contracts for any work done upon or materials furnished for the structures concerning which he is employed; nor is he entitled to receive notice of an assignment of payments accruing on the contract so as to charge the owner with notice thereof." 6 Cyc., 29.

See, also, 4 Elliott, Contracts, § 3614; Lloyd, Law of Building (2d ed.), §§ 11, 12. In the absence of an express contract, or compelling facts, it is never held, as a matter of law, that an architect has any implied power to purchase materials or to enter into a contract for or on behalf of the owner. His duties are well defined and well understood, and there is nothing pertaining to his engagement that is calculated to mislead any one dealing with him.

In *Campbell v. Day*, 90 Ill. 363, one Day entered into a contract to furnish material for erecting and finishing a certain building. The plans had been prepared by an architect. The work was to be paid for from time to time as the work progressed. The principal contractor let a subcontract to do all the cut stone work. The subcontractors did certain work that was not within the terms of their contract. It was contended that the architect had directed the work to be done; that the owner knew of the change and made no objection thereto. It was held that a contract having been let to complete the building, the architect had no authority to bind the owner by any promise express or implied. His duty was limited to supervision and direction of the work to be done by the contractor or those acting under him.

It is not shown that appellant ever took the matter up with the respondent, which, it will be remembered, is a private corporation, and it is not shown that it had a manager or overseer about the work, or that notice of the alleged new contract came directly or indirectly to those in authority; nor is appellant in a position to claim that he was without notice of the fact that the work he was doing had been contracted to another, and that, until notice was brought to the respond-

ent, it had a lawful right to rest upon its original contract.

*Ringel v. Newman,* 69 Wash. 583, 125 Pac. 943, and *Architectural Decorating Co. v. Nicklason, supra,* are not in disharmony with the rule laid down in this case. In the *Ringel* case, the agency could not be disputed. The son of the defendant had the construction of a building in charge for his mother, who was the owner. He was acting for her with full power. In the *Nicklason* case, the court held that, where the owner contracts directly for material, he cannot set up as a defense the fact that duplicate statements of all the materials furnished for the building were not sent or delivered to him. The authority of an architect and the scope of his agency were not discussed in either case.

In the case at bar, although the architect may have said all that the witnesses say he said, it could not be tortured into a personal promise on the part of the respondent. The architect went no further than to say, in terms or by fair implication, that no legal remedy would be lost if appellant performed his contract with the principal contractors. He did not make a new contract for the payment of money or promise a way to reach the money due on the main contract that was not already possessed by appellant. So far as the present record goes, respondent is still bound under its contract to pay Moore and Hardin. There being no lien, and no personal promise, express or implied, it follows that the judgment of the lower court is affirmed.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.