[No. 14348.  Department Two.  February 5, 1918.]

STIMSON MILL COMPANY, *Respondent,* v. FEIGENSON
ENGINEERING COMPANY *et al., Appellants;*
NATATORIUM COMPANY *et al., Defendants.*[1]

CONTRACTS—BUILDING CONTRACTS—PERFORMANCE—PRICE—REASON-
ABLE VALUE.  The rejection by the architect of material from one
dealer after it proved defective, does not compel the contractor to
buy of another dealer suggested by the architect, if he could buy fit
material elsewhere at a less price; and the reasonable value of the
material purchased could not be measured by comparison with unfit
material.

MECHANICS' LIENS—LIENABLE ITEMS—CARTAGE.  An item of .cart-
age of material used in the construction of a building is lienable.

SAME—LIENABLE ITEMS—FORMS FOR CONCRETE.  Lumber used in
the construction of concrete forms is lienable, although in part used
afterwards, since it is common knowledge that form lumber in con-
crete work is to be classed as waste; and Rem. Code, § 1129, giving
a lien for all lumber used in the construction does not require that
it remain permanently in the building.

PRINCIPAL AND SURETY—LIABILITY OF SURETY—BUILDING BONDS.  A
surety bond of a contractor guaranteeing performance of the con-
tract renders the surety liable for the payment of material used in
the construction of the building although the bond does not so pro-
vide in terms.

MECHANICS' LIENS — NOTICE TO OWNER — ARCHITECT AS AGENT —
POWERS.  A provision in a building contract that there was other
work to be done and material to be furnished not included in the
general contract and that the architect was to arrange the prosecu-
tion of all work in order that different work could proceed con-
currently, does not give the architect authority to bind the owner
for work or materials not covered in the main contract, or make
him the "agent" of the owner for the purpose of ordering materials
that would be lienable without notice of delivery to the owner as
required by Rem. Code, § 1133.

Appeals from a judgment of the superior court for
King county, Mackintosh, J., entered June 26, 1917,
upon findings in favor of the plaintiff, in an action to
foreclose mechanics' liens, after a trial to the court.

[1]Reported in 170 Pac. 573.

Affirmed on appeal of Feigenson Engineering Company; reversed on appeal of C. D. Stimson Company.

*Cassius E. Gates* (*Julius A. Coleman,* of counsel), for appellants Feigenson Engineering Company *et al.*

*Douglas & Douglas, A. H. Wiseman,* and *H. D. Folsom, Jr.,* for appellant C. D. Stimson Company.

*Hughes, McMicken, Ramsey & Rupp,* for respondent Stimson Mill Company.

*Hartman & Hartman,* for intervener Seidelhuber.

*Tucker & Hyland,* for intervener Pederson.

CHADWICK, J.—The C. D. Stimson Company, a corporation, hereinafter referred to as the owner, leased to the Natatorium Company, a corporation, to be referred to as the lessee, certain property in the city of Seattle. It agreed to construct a building for the lessee to be used by it as a natatorium. An architect was employed to draw plans and specifications. He entered into a contract with the lessee. The contract was vised on its face "Accepted by C. D. Stimson Co., Per. Thomas D. Stimson." General plans and specifications were prepared, and a contract let to Hans Pederson to construct the building according to the satisfaction of the architect and the owner.

Several questions, related in no way, one with the other, are presented by the record. They arise out of the claims of lienholders and will be treated separately.

THE STIMSON MILL COMPANY.

Pederson let a subcontract to the Feigenson Engineering Company for the construction and removal of concrete forms. The subcontractor bought a certain amount of lumber from the Stimson Mill Company. This lumber was not paid for. The mill company filed its lien making the engineering company a party. The

owner and Hans Pederson, the contractor, who had intervened, answered jointly bringing in the Fidelity & Deposit Company, surety upon the engineer's bond, as a party.

The court decided, among other things, that the mill company was entitled to assert a lien for the amount of the lumber used to make the concrete forms, and that Pederson should have judgment over against the engineering company and the surety company, after the claim of the mill company had been satisfied.

The engineering company and the surety company attack the decree for the following reasons: That the amount of the judgment is too large; that the plaintiff is not entitled to a lien; and that the intervener Pederson is not entitled to a judgment over against the surety company in any event.

The contention that the recovery is too large is based upon the testimony of Mr. Feigenson, the manager of the engineering company. He bought some lumber, which he says was fit for the uses intended for $6.50 per M, whereas the mill company charged $8 with $1 for delivery, making a total charge of $9. He says that the architect rejected the lumber he bought elsewhere, and following Mr. Pederson's suggestion that he give the mill company his business on an equal basis with others, he called the manager of the mill company to the telephone and asked for a quotation of prices. He was quoted the price charged. He ordered "two loads of lumber to give them a chance to think it over whether they wanted to take it at the other man's price or not." The challenge of the engineering company to the amount of the claim rests in the following questions and answers:

"Q. How did the remaining material happen to be delivered? A. After I had received a considerable amount from the other people, then, through the archi-

tect's inspector on the job, they refused to let me use any more of this other man's material, and I still kept on ordering it, and it got so bad at times that the inspector on the job would go into the office and call up Mr. Ives to find out whether he would let me unload the load of lumber or not. In other words, they forced me to buy material from them at the higher price. Q. You, every time you needed more lumber you would call them up and described the lumber you wanted and they would send it? A. I had to do it. Q. You did do it? A. I had to do it. Q. The architect required you to do it? A. Yes, sir.''

Clearly the architect had a right to throw out unfit material. The engineering company was under no compulsion to buy from the mill company. If it could have bought fit material elsewhere, it was free to do so. There is no showing that it could have bought fit material at a less price than it agreed to pay the mill company, and the law will not permit it to measure the reasonable value of sound lumber by comparison with unsound material.

A claim is made that the item of cartage is not lienable. It has been held otherwise. *Brace & Hergert Mill Co. v. Burbank*, 87 Wash. 356, 151 Pac. 803; *Siler Mill Co. v. Nelson Co.*, 94 Wash. 477, 162 Pac. 590.

It is next contended that a lien will not lie for the value of lumber used in making concrete forms, for the reason that the lumber does not become a part of the finished structure. As by way of emphasis, counsel calls attention to the wording of the subcontract, which called for the ''construction and removal'' of the concrete forms, and that the forms were removed and in part used on another job, in part given to a third party, and in part burned. It is also contended that the lumber for concrete forms is an appliance and falls within our own cases holding that a lien will not lie for tools or appliances used to facilitate the work.

The use of concrete in modern building operations has become so common that we may almost take judicial notice of the fact that buildings are no longer erected without the use of it, and that form lumber when once used is stained, warped, wired and coated with cement so that it is no longer a commercial commodity, and is to be classed as waste. It was within the contemplation of all the parties to this contract that lumber forms must be used.

Our statute, Rem. Code, § 1129, provides that a lien may be had for all materials used in the construction of a building. It does not provide that all material shall remain permanently in the building, and we see no more reason for rejecting form lumber as a subject of lien than we would have for refusing a lien for false work erected to sustain an arch or floor. The great weight of modern authority is to the effect that a lien may be asserted for the value of lumber used to make concrete forms. *Baldwin Locomotive Works v. Edward Hines Lumber Co.* (Ind.), 116 N. E. 739; *Stravs v. Steckbauer,* 136 Minn. 69, 161 N. W. 259; *Darlington Lum. Co. v. Westlake Const. Co.,* 161 Mo. App. 723, 141 S. W. 931; *Chicago Lum. Co. v. Douglas,* 89 Kan. 308, 131 Pac. 563, 44 L. R. A. (N. S.) 843; *Moritz v. Sands Lumber Co.,* 158 Wis. 49, 146 N. W. 1120, 51 L. R. A. (N. S.) 1040; *Avery & Sons v. Woodruff & Cahill,* 144 Ky. 227, 137 S. W. 1088, 36 L. R. A. (N. S.) 866.

In *Adams v. Dose,* 87 Wash. 575, 152 Pac. 9, a lien for forms for concrete was sustained. The objection now made was not suggested by either court or counsel.

We are not called upon to decide whether a contractor who buys lumber to build standard forms, permanent in character and intended to be taken out and used again in like construction, would be entitled

to a lien. It is enough that the material furnished by the claimant was used in the construction of the work. Under the facts, a liberal interpretation of the statute, Rem. Code, § 1129, demands that a lien for its value be sustained.

It is next contended that no notice was given by the mill company to the owner. The notice is a part of the record. The proof shows that it was given, and its receipt is acknowledged. The statutory notice is provided for the benefit of the owner, and it is not complaining.

Neither is there merit in the contention that the surety company is not bound to pay the cost of the material. It engaged itself as a surety under the following conditions:

"The condition of this obligation is such that whereas the Feigenson Engineering Company has entered into a contract with Hans Pederson for the furnishing and construction of all concrete forms to be used in the Natatorium building, being erected at the southern corner of Second avenue and Lenora street, Seattle, Washington, which contract is hereby referred to and made a part hereof as fully as if set forth at length herein.

"Now therefore, if the Feigenson Engineering Company shall perform said contract in accordance with the plans and specifications prepared therefor, then this obligation to be void, otherwise to remain in full force and effect."

It is said that this bond is not the "statutory bond," and does not provide in terms that the surety will pay laborers or materialmen. We are not directed to any statute providing a form of bond between individual contractors. The engagement is ample to hold the engineering company and its surety to the payment of material to be used in the construction of forms. An undertaking to furnish material implies a promise to

pay for it. *Wheeler, Osgood & Co. v. Everett Land Co.,* 14 Wash. 630, 45 Pac. 316.

### NOVELTY ORNAMENTAL IRON WORKS.

Frank Seidelhuber, under the above trade-name, had furnished the ornamental iron and metal work provided for in the main contract, for all of which he has been paid. Between June 12, 1916, and November 7, 1916, he furnished other material and labor beyond the terms of the written plans and specifications, for which he claims payment.

While the work on the general contract was going on, the lessee was engaged in putting in equipment to carry out its particular purposes. The architect in charge seems to have had supervision of the work done by and on account of the lessee as well as that done for the owner under the main contract. He or his assistant, from time to time, ordered material from, and its installation by, claimant. When the invoices came in, the architect would indorse on them the word "owner," or the words, "Nat. Co.," accordingly as he conceived the item to be for something going into the permanent structure, or for the uses of the lessee. The court below allowed the claim to the extent of $476.

The decree is objected to upon several grounds. If the claimant has any right to recover, it is upon the theory, to be resolved as a fact, that the architect was the agent, the *alter ego,* of the owner, with power to require the building to be equipped with such extra furnishings as he might deem necessary to a building intended to be used as a natatorium.

The material and labor for which a lien was claimed was ordered by the architect or his assistant. No notice was sent to the owner by the claimant, nor was any demand for payment made until long after the material had been furnished and the work done. It

is argued that no such notice was necessary. This, upon the theory that the architect being the agent of the owner, the sale was direct, and no notice was necessary. See *Spokane Valley Lum. & Box Co. v. Dawson,* 94 Wash. 246, 161 Pac. 1191, and cases cited therein.

It is not contended that the materials or labor are covered by the main contract, or that the owner has not fully made all payments due under the main contract. But it is insisted that the agency of the architect and his authority to bind the owner beyond the terms of his contract, or the contract of the claimant, is to be found in the following clause of the contract between Hans Pederson and the owner.

"It is understood that there is other work to be performed and other material to be furnished, than that included in the general contract. The architect is to arrange the prosecution of all work in order that the work under the general contractor and the work of the other contractors or subcontractors in the construction of the building and the complete equipment of the same for natatorium purposes, may proceed concurrently, and thereby enabling the said natatorium to be opened for business immediately upon the expiration of the one hundred fifty days in this contract."

The claimant was not a party to this contract, nor was it made for his benefit, nor will the provision bear the construction put upon it by counsel. The intent of the owner was that other work, presumably work of the Natatorium Company, should not interfere with or delay the work being done under the general contract, so that the general contractor and his subcontractors might proceed concurrently with "other work" to the end that the opening of the natatorium might not be postponed beyond the expiration of a time limit fixed in the contract. The mere fact that the architect assumed to go beyond the main contract and order materials or labor would not make him the

agent, or bind the owner to pay under Rem. Code, § 1133.

*Housekeeper v. Livingstone,* 48 Wash. 209, 93 Pac. 217, is cited as authority to the effect that, where improvements are made upon leased ground with the knowledge of the owner of the fee, his interest will be subject to a lien unless he expressly notifies the lien claimant to the contrary. But the rule in that case was overcome—indeed, we may assume that the decision of the court prompted the legislature to pass an act putting the burden of written notice upon a materialman. The act provided that "no materialman's lien shall be enforced unless the provisions of this act have been complied with." Laws of 1909, p. 71, § 1; Laws of 1911, p. 376, § 1 (Rem. Code, § 1133).

*Ward v. Thorndyke,* 65 Wash. 11, 117 Pac. 593, is as readily disposed of. There the architect was not limited in authority by any written contract, and the court held that the verbal contract was modified to the extent of allowing for extras.

We have held that an architect has general powers within the building contract, but he has no plenary power to bind the owner, or to extend the scope of his agency. *Wiley v. Hart,* 74 Wash. 142, 132 Pac. 1015.

We conceive the case of *Schanen-Blair Co. Marble & Granite Works v. Sisters of Charity of the House of Providence,* 77 Wash. 256, 137 Pac. 468, to be directly in point. We there said that the authority of an architect is not absolute; that he is bound by the general rules of agency, and upon a finding that the architect had no authority to bind the respondent beyond the terms of its contract, we held that recovery would be denied. In commenting upon the case of *Campbell v. Day,* 90 Ill. 363, we said:

"One Day entered into a contract to furnish material for erecting and finishing a certain building. The

plans had been prepared by an architect. The work was to be paid for from time to time as the work progressed. The principal contractor let a subcontract to do all the cut stone work. The subcontractors did certain work that was not within the terms of their contract. It was contended that the architect had directed the work to be done; that the owner knew of the change and made no objection thereto. It was held that a contract having been let to complete the building, the architect had no authority to bind the owner by any promise, express or implied. His duty was limited to supervision and direction of the work to be done by the contractor or those acting under him.''

We have treated this case as if the architect were in fact the agent of the owner, and not the agent of the lessee, a holding, which if otherwise material would be exceedingly doubtful. Nor are we entirely convinced that the claim was filed in time, but as that question would require a somewhat extended sifting of the evidence, and being convinced that the lien cannot be sustained for the reasons assigned, we deem it unnecessary to inquire into the preponderance of the evidence.

The judgment of the lower court will be affirmed upon the appeal of the Feigenson Engineering Company. It will be reversed upon the appeal of the C. D. Stimson Company. Remanded with instructions to decree accordingly.

ELLIS, C. J., HOLCOMB, MORRIS, and MOUNT, JJ., concur.