[No. 17630.  Department Two.  May 3, 1923.]

# J. A. HURLEY et al., Appellants, v. KIONA-BENTON SCHOOL DISTRICT No. 27, Respondent.[1]

CONTRACTS (139)—BUILDING CONTRACTS—PERFORMANCE OR BREACH —CERTIFICATE OF ARCHITECT—POWER TO CHANGE PLANS. An architect has no authority to excuse contractors from performing any part of the work, under a contract, stating that he shall have charge of the work and give interpretations of the writings.

SAME (150, 151)—BUILDING CONTRACTS—ACCEPTANCE OF PERFORMANCE—DEFECTS AND OBJECTIONS—WAIVER. Occupancy of a building is not, as a matter of law, an acceptance of the work which would waive the owner's right to recover from the contractor for failure to complete it.

ARBITRATION AND AWARD (3)—AGREEMENTS TO ARBITRATE—CONDITION PRECEDENT TO ACTION. Failure to arbitrate does not defeat recovery for failure to complete a building, where the contract merely called for arbitration in case of disputes as to the price for alterations or where there is interference with the work resulting in damages.

CONTRACTS (143)—BUILDING CONTRACTS—PERFORMANCE OR BREACH —CERTIFICATE OF ARCHITECT—FRAUD—DAMAGES FOR BREACH. A final certificate given by an architect on excusing the contractor from complete performance, is a fraud on the owner and void, where it was known by all parties that the work provided for in the contract was not performed to the extent of over $2,000.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered January 16, 1922, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Stephen E. Chaffee* and *R. John Lichty*, for appellants.

*McGregor & Fristoe* and *G. W. Hamilton*, for respondent.

PEMBERTON, J.—On or about the 15th day of July, 1920, the respondent, Kiona-Benton School District

[1] Reported in 215 Pac. 21.

No. 27, entered into a written agreement with appellants, Hurley and Leichnitz, for the installation of plumbing and a heating plant in a school building then being constructed at Benton City. Prior to the execution of this contract, there were extended negotiations between the parties, resulting in a proposed written contract being submitted to the board of education of respondent school district. This contract was rejected by the school board for the reason that certain modifications of the work agreed upon were not shown in the contract. Thereafter a written addenda attached was formally signed by the respondent and appellants. When the plumbing had been practically completed, respondent employed one Springsteen to examine the same. A portion of the plumbing was condemned and later replaced by appellants, concerning which portion there is no controversy. Payments were made to appellants in two installments, prior to the final certificate. Respondent made demand upon appellants to complete the contract according to the specifications. The architect, disregarding this request and without making an examination of the work, issued the final certificate in which he certified that the contract had been completed and that the appellants were entitled to the sum of $2,114, the balance due according to the contract. On the refusal of the respondent to pay the same, appellants instituted this action to recover the amount due upon the final certificates.

The respondent, in its answer to the complaint, put in issue the entire contract, charged collusion between the architect and appellants, alleged that the final certificates were issued without the exercise of judgment of the architect and were false and fraudulent, alleged failure to perform and defect in workmanship, and asked for damages by reason of the failure on the part of appellants to perform the contract.

The trial court found that respondent was damaged in the amount of $2,836; that there was unpaid on the contract the amount of $2,114, leaving a balance due from appellants to respondent as damages the amount of $722.

It is the contention of appellants that the certificate of the architect was final and constituted an acceptance of the work; that respondent accepted the work and is now estopped from claiming that the work was unsatisfactory; that the respondent, having stated its ground for refusing to pay the final certificate, is estopped from making objections on any other theory; and that the failure to submit to arbitration is a waiver of any defects which could have been arbitrated.

It is admitted by appellants that they failed to install about $800 worth of plumbing and to cover the pipes of the heating plant, amounting to about $500, and to install a boiler worth about $900, and substituted therefor a second-hand boiler which had been purchased for $150. It is admitted that these items were provided in the contract, but contended by appellants that, under the architect's construction of the provisions of the contract, they were relieved from performing this work.

It is the contention of respondent that the architect had no authority to change the contract, and in certifying that the work had been done according to the contract, he acted without authority and without exercising judgment, and such certificate, being issued under gross mistake, is fraudulent and is not binding upon respondents.

Paragraph 20 of the contract provides as follows:

"Verbal Modifications. It is distinctly understood that no verbal statement of any person whomsoever shall be allowed in any manner or degree to modify or otherwise affect the terms of this specifications or

of the contracts for the work. Changes will be made only in writing, signed by the architect and countersigned by the owner, etc."

Paragraph 22 of the contract provides as follows:

"Duties of Architects. The architects shall have charge of the work for the owner, and their duties shall consist in giving on demand such interpretations, either in language, writing or by drawings as in their judgment the nature of the work may require, having particular care that any and all work done and materials used be combined and done as hereinafter described and specified . . ."

Under the contract, the architect was without authority to change the contract. His duties in that respect were limited to interpretations of the contract.

"The architect or engineer, ordinarily, has no implied authority to modify the contract or authorize deviations therefrom." Elliott on Contracts, vol. 4, p. 839, 6 Cyc. 29.

". . . but it is held that the architect or engineer cannot dispense with the performance of any substantial part of the contract. And the acceptance of a different class of work from that contracted for will not bind the owner." Elliott on Contracts, vol. 4, p. 898.

"An unauthorized acceptance of a building by the architect may not waive the owner's right to damages for failure to fully perform the contract." Elliott on Contracts, vol. 4, p. 896.

In the case of *Dyer v. Middle Kittitas Irr. Dist.*, 40 Wash. 238, 82 Pac. 301, the court said:

"The contract provides that the engineer shall define the meaning, intent, and purport of the plans and specifications, and that his decision in all cases shall be final; but this, it is plain, refers to the interpretation of doubtful and uncertain terms of the contract, not to the question of law presented by the language of the contract or specifications. This clause does not confer upon the engineer the power to vary the mean-

ing of plain terms used in the contract, for if this were so, there would be no need of the writing, as the engineer's arbitrary assertion would be all-sufficient.''

In the case of *Ilse v. Aetna Indemnity Co.*, 55 Wash. 487, 104 Pac. 787, the court said:

''There has been much loose expression on the part of courts upon this subject, and many of them have seemingly held that the certificate once given cannot be questioned. . . . But here we have no such condition. . . . In this case the certificate of the architect fixed an amount in excess of the amount actually due. This fact cannot be questioned. . This condition was brought about 'through the probable mistake of plaintiff, concurring with the indolence or ignorance of the architect. It did not voice the honest judgment of the architect, and for that reason was liable to impeachment by either party. The court committed no error, then, either from the viewpoint of the fact or the law, in admitting evidence to impeach the certificate of the architect.''

Appellants contend that respondent had inspectors during the progress of the work and thereby accepted the same. The portion of the work that was inspected and accepted is not in controversy in this case. It is only the portion of the work that was not inspected.

The appellants insist that, since respondent occupied the building, this, as a matter of law, is acceptance of the work, and call attention to the rule as follows:

''As a general rule where the owner of a building accepts the same and takes possession thereof, and at the time of doing so the building is incomplete and contains patent and obvious defects, the acceptance will be deemed a waiver and the contractor will be entitled to recover the amount earned on the contract.'' *Steltz v. Armoury & Co.*, 15 Idaho 551, 99 Pac. 98.

This is the rule where the owner of the building accepts the same, but mere occupancy does not waive

the right to recover against the contractor for failure to complete the contract.

"... the mere fact that the owner enters into possession and uses a building which has been constructed for him does not ordinarily constitute a waiver of a non-compliance by the contractor with his contract in erecting the building. The occupancy and enjoyment of the structure by the owner does not necessarily preclude him from showing that the contractor's work has been improperly or defectively executed." 6 R. C. L. 995, § 362.

There is no merit in the contention of appellants that respondent waived its right to recover to all items except those complained of by letter of March 26 to the architect. Such fact does not preclude respondent from recovering upon any additional item of damage subsequently discovered.

It is the contention of appellants that respondent cannot defend this action because of its failure to arbitrate as provided in the contract, calling attention to the case of *Herring Hall-Marvin Safe Co. v. Purcell Safe Co.*, 81 Wash. 592, 142 Pac. 1153, wherein the court said:

"We have held in a long line of cases that, where parties enter into a contract, and provide therein that all differences between them that may thereafter arise out of the contract shall be submitted to a board of arbitrators whose decision therein shall be conclusive and final upon the parties, no action can be maintained on the contract by either party until he has tendered arbitration of the differences to the other party, and such other party has refused the tender."

The contract in question, however, has no such provision with reference to arbitration. Paragraph 3 provides that, when alterations are made in the contract, the architect shall specify the amount to be paid; and if this amount is not satisfactory it may be arbi-

trated.   Paragraph 8 provides that the architect will fix the price of material where alterations are made. Paragraph 7 provides for an arbitration where there is interference with the work, resulting in damage.

The contract in question in this case is clear, plain and unambiguous and cannot be varied or explained by parol evidence.   Neither did the architect have authority to excuse appellants from the performance of any part of the contract, and the issuance of a final certificate by the architect, certifying that the provisions of the contract had been complied with on the part of appellants, when in fact it was known by all parties connected with this transaction, including the architect himself, that the work provided in the contract had not been performed on the part of appellants, constituted fraud and was not binding upon either party to the contract, and the respondent is entitled to damages for failure of appellants to complete the work according to the contract.

The judgment of the trial court will be affirmed.

MAIN, C. J., MACKINTOSH, FULLERTON, and TOLMAN, JJ., concur.