[No. 33062.   Department One.   July 28, 1955.]

AMERICAN FIDELITY AND CASUALTY COMPANY, *Appellant*, v. ERNEST A. BACKSTROM *et al.*, *Respondents.*[1]

[1]Reported in 287 P. (2d) 124.

*Cheney & Hutcheson* and *Lauren W. Dobbs*, for appellant.

*Bayley, Fite, Westberg, Madden & Goodin* and *John A. Moore*, for respondents.

SCHWELLENBACH, J.— Plaintiff in this action sought an adjudication under the declaratory judgment act declaring that there was no insurance coverage under a truck liability insurance policy issued by plaintiff to defendant Backstrom

with reference to a certain collision between two trucks. A trial to the court resulted in a declaratory judgment in favor of defendants that there was coverage under the policy. Plaintiff appeals.

Markel Service are the underwriting managers, and also the exclusive claim agents, of American Fidelity and Casualty Company. Paul T. Walls, of Yakima, was, at the times involved, a local agent producer for Markel. He had authority to solicit business on behalf of the casualty company and to receipt for and forward premium payments but no authority to bind any risk with the company. He would submit to Markel a completed application on a particular risk. They in turn would investigate and determine the risk and, if it were found acceptable, after receipt of the premium, would bind the risk and issue the policy.

In 1947, the company, through Walls, issued to Ernest A. Backstrom its automobile insurance policy No. PT 44804, covering a truck. The policy was renewed and extended from time to time. Also, the company, through Walls, had issued policy No. PT 45711, covering a tractor-truck and a Fruehauf semitrailer, to Carl Montgomery.

In 1949, Montgomery talked to Backstrom about selling his equipment to him. No deal was made at that time. The two went to Walls' office and talked to him and the girl who worked in the office. Backstrom asked them if they could put Montgomery's truck and trailer on his policy. He told them that he and Montgomery had talked about his purchasing the equipment and that he planned to do so some time, but that it still belonged to Montgomery. Backstrom testified that Walls and the girl said "O. K."; that that was all they wanted to know; that Walls said he would attempt to secure the endorsement on the policy, but that premiums would be doubled, and that he and Montgomery agreed each to pay one-half. (At the trial, Backstrom was the only witness to testify concerning this transaction. Montgomery was in the service, and Walls had sold his business and had left Yakima. The day before the trial ended, counsel for plaintiff company indicated that Walls

would be there to testify the following day. However, he did not appear, and no further explanation was made concerning his absence.)

At any rate, Walls wrote the following letter:

"Markel Service                                          September 2, 1949
677 South Parkview Street
Los Angeles 5, Calif.

Re: PT-45711 Carl Montgomery

"Dear Sir:

"Mr. Montgomery has sold the equipment covered under the above numbered policy to Mr. Ernest A. Backstrom and we would like to have the above numbered policy transferred to Mr. Backstrom. I believe this can be done without the regular application because of the fact that we carry insurance on another outfit for Mr. Backstrom under policy # PT 44804. However, we would like to have Montgomery's policy just transferred to Mr. Backstrom until the expiration date of October 18th. Mr. Backstrom has requested us to keep the insurance on the two outfits separate.

"Please change the policy (PT-45711) over to Backstrom and make the proper filing.

                                        "Very truly yours,
                                              [signed]
"vl                                     "PAUL T. WALLS"

Upon receipt of the letter, Markel Service, relying upon Walls' statement, and with knowledge that their records showed Montgomery as an undesirable risk, made the change. They added endorsement No. 9 to Backstrom's policy, effective October 25, 1949, covering the Montgomery tractor and semitrailer, and thereafter Backstrom and Montgomery paid the premiums to Walls, as hereinbefore indicated. Backstrom did not purchase the equipment from Montgomery until September, 1950.

May 5, 1950, in Ventura, California, a collision occurred between the tractor-truck and semitrailer operated by Nick Dettling, an employee of Montgomery, and a truck owned and operated by Joseph Peirone. The accident was caused by Dettling's negligence. There is no question that, at the time of the accident, the tractor-truck and semitrailer were the property of Montgomery. Backstrom notified Walls of the accident within two days of its occurrence.

The question before the trial court was whether or not American Fidelity and Casualty Company was liable on its policy issued to Backstrom covering the tractor-truck and semitrailer, because of Dettling's (Montgomery's employee) negligence.

The court found that Walls was the company's agent; that no false statements were made by either Backstrom or Montgomery relative to the ownership of the equipment; that the company knew, through its agent, Walls, that Montgomery was the owner, and concluded that the company was liable under its policy.

The record does not clearly preponderate against the court's findings.

RCW 48.17.010 defines an insurance agent:

" 'Agent' means any person appointed by an insurer to solicit applications for insurance on its behalf, and if authorized so to do, to effectuate and countersign insurance contracts except as to life or disability insurances, and to collect premiums on insurances so applied for or effectuated."

The facts which we have heretofore related clearly place Walls within the definition. Furthermore, as to the particular transaction concerning the transfer of liability from Montgomery to Backstrom, the record shows that Walls arranged and recommended the transfer. In fact, the company complains that it relied upon Walls' representations in this respect to its detriment.

The only testimony as to the statements of Backstrom and Montgomery to Walls concerning ownership of the equipment was given by Backstrom. The court believed. him. It, therefore, was justified in holding that there was no fraudulent misrepresentation by either Backstrom or Montgomery.

It is clear from the evidence that, at the time Walls wrote the letter of September 2, 1949, he knew that Montgomery had not sold the equipment to Backstrom and that Montgomery was still the owner. Our chief concern is whether or not the company was estopped to deny liability on the policy on the theory that Walls' knowledge as agent

was imputed to the company as principal. The rule as to what knowledge had by an agent will bind the principal was stated in *Miller v. United Pac. Cas. Ins. Co.*, 187 Wash. 629, 60 P. (2d) 714, wherein we quoted from 2 Mechem on Agency (2d ed.) 1397, § 1813 as follows:

" 'The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it. Provided, however, that such notice or knowledge will not be imputed: (1) Where it is such as it is the agent's duty not to disclose; (2) Where the agent's relations to the subject-matter are so adverse as to practically destroy the relation of agency; and, (3) Where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal.' "

It is to be noted that, under the general rule as stated, knowledge is binding where the agent is acting within the scope of his authority. The fact that Walls, in his letter, stated what purported to be the facts, and recommended that the policy be changed over to Backstrom, coupled with the fact that the company acted upon his recommendation, convinces us that, as to this particular transaction, Walls was acting within the scope of his authority.

Appellant contends that the facts of this case bring it within the second and third exceptions to the rule, thus rendering the general rule inapplicable.

Obviously, the third exception does not apply because here there was no collusion between either Backstrom or Montgomery with Walls to cheat or defraud the principal. In *Paulson v. Montana Life Ins. Co.*, 181 Wash. 526, 43 P. (2d) 971, the applicant advised the insurance company agent that he could not obtain insurance because he had diabetes. Nevertheless, the agent took him to a medical examiner. The agent remained in the room during the examination and answered the physician's questions, while

the applicant remained silent. As a result, an insurance policy was issued to him. We held that the agent's knowledge and participation in the false representations did not render the company liable on a policy procured by the fraudulent collusion of the insured and the agent. That was not the situation here.

On the other hand, we held in *Turner v. American Cas. Co.*, 69 Wash. 154, 124 Pac. 486, that where the insured fully and truthfully disclosed his condition to the insurance agent who procured the policy, a warranty clause in the policy would not be held breached for a cause known to the agent before the application was signed. We stated that the underlying principle in cases of that sort is that the knowledge of the agent is the knowledge of the principal, without regard to whether the agent communicates the facts to it.

We realize that an agent's acts may be so adverse to the interests of his principal as to actually destroy the relationship of principal and agent. That may have been the situation here. But we do not know. We can only surmise. Walls may have felt that what he was doing was for the best interests of the company. We do not have the benefit of his testimony, or the testimony of the lady who worked in his office and who apparently transacted a considerable amount of his business. I Restatement of the Law of Agency 627, § 282, defines the meaning of "acting adversely": "The mere fact that the agent's primary interests are not coincident with those of the principal does not prevent the latter from being affected by the knowledge of the agent if the agent is acting for the principal's interests." We do not feel justified, based upon surmise, in destroying the relationship of principal and agent which existed at the time the particular transaction occurred. Appellant has failed to sustain the burden of proving that the knowledge of its agent as to ownership of the equipment was not imputed to and binding upon it.

Appellant urges that there was a breach of warranty as to ownership, in that statement VII of the schedule attached to Backstrom's policy recited: "The above de-

scribed automobiles are owned exclusively by the assured."

RCW 48.18.090 reads in part:

". . . no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive."

This court, in *Miller v. United Pacific Cas. Co.*, *supra*, met with the contention that a policy of automobile liability insurance was voided because of a warranty of unconditional ownership of the car in the insured. The court cited Rem. Rev. Stat., § 7078 [*cf.* RCW 48.18.090 (1)], quoted above, and said:

"Construing that section of the statute, we have repeatedly held that, in order to avoid or defeat the policy, there must be proof of intent to deceive. *Eaton v. National Casualty Co.*, 122 Wash. 477, 210 Pac. 779; *Houston v. New York Life Ins Co.*, 159 Wash. 162, 292 Pac. 445; *McCann v. Reeder*, 178 Wash. 126, 34 P. (2d) 461."

We are cognizant of the rule that false representations, or warranties known to be false, give rise to a presumption of an intent to deceive, which is not overcome by the unsupported denial of the insured. *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wash. 49, 189 Pac. 95; *Hayes v. Automobile Ins. Exchange*, 129 Wash. 202, 224 Pac. 594. But here the record is clear that Backstrom and Montgomery told appellant's agent that Montgomery owned the equipment. There was not only no intent to deceive on their part, there was no deceit.

We find no merit in appellant's other assignments of error and will not discuss them.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

---

September 12, 1955. Petition for rehearing denied.