[No. 39335.    En Banc.    August 21, 1969.]

LINDBROOK CONSTRUCTION, INC., *Respondent,* v. MUKILTEO SCHOOL DISTRICT No. 6, *Appellant.**

*Robert E. Schillberg, Donald E. Priest, Merle E. Wilcox,* and *Elmer Johnson,* for appellant.

*Short, Cressman & Cable* and *William L. Hintze,* for respondent.

HILL, J.—There are on this appeal 10 assignments of

*Reported in 458 P.2d 1.

error; 4 relate to claimed errors in the findings of fact made by the trial court; 5 relate to a failure to make findings proposed by the defendant-appellant; and 1 relates to the trial court's conclusion of law No. 2:

> That judgment should be entered in favor of the plaintiff and against the defendant in the sum of $42,834.20 together with plaintiff's taxable costs.

The findings of fact give a succinct statement of what the controversy is all about. The plaintiff is a construction company; the defendant is a school district. Findings of fact Nos. 3 to 8 inclusive are as follows:

> That on or about the 17th day of July, 1963, plaintiff submitted to defendant its bid for the grading and drainage work at the site of the Lake Stickney Elementary School, Mukilteo, Snohomish County, Washington. That defendant furnished Specifications, Drawings and other contract documents to plaintiff for use in the preparation of its bid.

(Finding of fact No. 3)

> That the specifications, drawings and other contract documents furnished plaintiff by defendant showed the work to be performed and made specific representations with respect to the conditions to be encountered, the source and amount of cut and fill, the depth of required excavation and that the fill material required would be available from areas of proposed cuts. That plaintiff reasonably relied upon said representations in the preparation and submission of its bid.

(Finding of fact No. 4)

> That plaintiff was awarded the contract for said work upon its lump sum bid of $33,617.00 and proceeded with the performance of the work as directed by the defendant through its authorized agents. That in the performance of the work plaintiff encountered unanticipated conditions at substantial variance with the conditions represented by the contract documents necessitating extra work as follows:
>
> > (a) Extensive shortage of fill material from areas of proposed cuts requiring plaintiff to open and utilize a borrow pit operation;

(b) Extra excavation, fill and select fill in the building area;

(c) Extra excavation and fill in the south parking area;

(d) Extra excavation, fill and gravel for the interceptor ditch; and

(e) Extra excavation and fill in the drainfield.

That the said extra work required plaintiff to obtain and utilize additional and heavier equipment, caused the work to extend into the fall and winter months resulting in increased weather and moisture problems and caused plaintiff to remain on the job for more than double the time which would have been required to complete the work as originally represented by the contract documents.

(Finding of fact No. 5)

That plaintiff gave notice to defendant of such changed conditions within a reasonable time after they were first observed and claimed an equitable adjustment for the extra work involved. That at all times defendant had knowledge of the conditions encountered and the extra work performed by plaintiff and defendant directed plaintiff to proceed with the said extra work.

(Finding of fact No. 6)

That the extra work plaintiff was required to perform by reason of the changed conditions and defendant's directions as hereinabove set forth was and is of the reasonable value of $39,355.09. That in addition thereto defendant has withheld from plaintiff on the basic contract price the sum of $3,479.11 which amount is due, owing and unpaid.

(Finding of fact No. 7)

That defendant has waived any claim for liquidated damages against plaintiff by its actions in directing the extra work, making payments during the alleged delay and leading plaintiff to believe that no liquidated damages would be assessed.

(Finding of fact No. 8)

As these findings indicate, on a contract for $33,617 the extras, as found by the trial court, amounted to $39,355.09. This seems extraordinary, but the School District, rather

than questioning the cost figures of the contractor[1] and presenting any of its own, urged that what the contractor was claiming to be extra work because of changed conditions was actually within the contract.

■ The findings go directly to the heart of the controversy and, contrary to the contention of the School District, find that in the performance of the work the contractor encountered unanticipated conditions at substantial variance with the conditions represented in the contract documents, which necessitated extra work; that the contractor gave notice of such changed conditions and claimed an equitable adjustment for the extra work; and that the School District at all times had knowledge of the changed conditions and directed the plaintiff to proceed with the extra work.

Although the School District assigns error to four of these findings (4, 5, 6 and 7) there is substantial (though conflicting) evidence to sustain them. These findings bring the case within our holding *Bignold v. King County,* 65 Wn.2d 817, 399 P.2d 611 (1965). The conclusion of law (quoted on page 540) to which error is assigned necessarily follows from the findings made.

The School District strenuously urges that Articles 25 and 26 of the contract preclude any recovery. Article 25, in part, provides:

> Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the drawings and specifications the contract sum shall be equitably adjusted upon claim by either party made within a reasonable time after the first observance of the conditions.

Article 26 provides:

> If the Contractor claims that any instructions by draw-

---

[1]The trial court, in announcing its judgment, said: "It is my opinion that plaintiff should recover for the extra work involved. The amount seems rather high and in fact I indicated such on Friday. However, there is no evidence to dispute such amount, so the Court will have to accept such amount correct." The difference between the extras in the sum of $39,355.09 as found by the trial court, and the judgment for $42,834.20 is the sum of $3,479.11 concededly due the plaintiff.

ings or otherwise involve extra cost under this contract, he shall give the Architect written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made.

■ It is the School District's position that there was no variance, but if it be assumed that conditions were at variance with the drawings and specifications, that no written notice having been given before proceeding to do the extra work, there can be no recovery.

The trial court held squarely notice in writing had been waived, saying:

It is clear to this Court that the architect knew of this work, that he directed that it proceed, and at such time he indicated he did not feel that such was an extra; so I do not feel the failure to give written notice set forth in the contract would apply. The fact he was never informed of the actual extra, in my opinion, would not have added anything. I feel failure of notice had been waived in the manner he handled such orders.

*Bignold v. King County, supra,* supports the trial court in that position. *See also American Sheet Metal Works, Inc. v. Haynes,* 67 Wn.2d 153, 407 P.2d 429 (1965).

The School District's attack on that holding, formalized in Finding No. 6 is that there is no testimony that the School District (*i.e.,* the School Directors) knew that extra work was being done.

There is no contention that the architect did not have full and complete knowledge of the conditions which developed in the course of this contract. He is apparently the only person connected with the School District with whom the contractor had any significant contacts. He was the one who told the contractor what to do, and what not to do. It strains credulity to believe that he failed to keep the School District authorities advised of what was happening. When this action against the district came on for trial, the architect was the sole witness presented by the district. At the trial level no one testified that there was any breakdown in

communications between the architect and the School District. It is only on appeal that this inference is urged.

■ Findings of fact made by the trial court which are supported by substantial evidence will not be disturbed on appeal. *Nielson v. King County*, 72 Wn.2d 720, 724, 435 P.2d 664 (1967). For a statement of the reasons for that oft-repeated rule see *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The contractor's right to recover under the circumstances of this case is clear. *Bignold v. King County, supra; Kieburtz v. Seattle,* 84 Wash. 196, 146 P. 400 (1915).

■ Another contention made by the appellant School District is that if anybody has been injured it is the subcontractor (West Brothers Construction, Inc.) which actually did the work and should recover the damages. This apparent concern for the subcontractor seems a little hypertechnical. The only party with whom the School District had any contractual relations is maintaining the action. In the absence of proof that the prime contractor has been released from its liability to its subcontractor, the former is entitled to bring suit for equitable adjustment of the contract price for extra work performed by the latter. *Kaiser Indus. Corp. v. United States,* 340 F.2d 322 (Ct. Cl. 1965); *Garod Radio Corp. v. United States,* 307 F.2d 945 (Ct. Cl. 1962).

The judgment is affirmed.

HUNTER, C. J., FINLEY, WEAVER, and ROSELLINI, JJ., concur.

NEILL, J. (dissenting)—I dissent for reasons which are briefly discussed in the majority opinion, but which are not substantiated by the record. There is here involved a basic agency issue of importance to public bodies engaged in public works contracts.

The facts giving rise to this litigation are adequately set forth in the majority opinion. These facts show that the defendant district awarded a public work contract to plain-

tiff to perform certain site preparation work at a lump sum price of $33,617. This contract was awarded pursuant to an invitation to bid as required by statute. RCW 28.58.135. During the course of performance of the contract, plaintiff was required by defendant district's architect to do certain excavation and filling which plaintiff contends constituted "extra" under the terms of the contract. Defendant's architect at all times contended this work was within the original contract and plaintiff was not entitled to compensation as a charge of "extra" under the contract. The trial court resolved this dispute in favor of plaintiff and entered judgment against the district for an amount which is $39,355.09 above the contract price.

The majority holds *Bignold v. King County,* 65 Wn.2d 817, 399 P.2d 611 (1965), to be determinative, but I believe there is a vital distinction between the facts in *Bignold* and the instant case. In *Bignold,* the county was aware of the work and claim of the contractor. We stated at 822:

> Another finding was that the contractor "gave timely notice of the subsurface conditions on the job site." In addition thereto, the appellant became immediately aware of the changed conditions as soon as they developed and ordered the contractor to perform the changes and extra work involved on these three items. Under such conditions, the county cannot defeat recovery by a contractor even if no written notice was given.

(Citations omitted.)

Here, there is no testimony or evidence that the defendant district received any notice or claim prior to performance of the claimed "extra" nor is there any evidence that the defendant district was aware of the dispute, the claim of plaintiff, or of any potential liability beyond its written contract. Error is assigned to the finding by the trial court

> That plaintiff gave notice to defendant of such changed conditions within a reasonable time after they were first observed and claimed an equitable adjustment for the extra work involved. That at all times defendant had knowledge of the conditions encountered and the extra

work performed by plaintiff and defendant directed plaintiff to proceed with the said extra work.

Finding of Fact No. 6.

In my reading of the record, I fail to find support for a finding that the district received notice of plaintiff's claim, had knowledge of the condition encountered, or of the extra work *unless* notice to and knowledge of the architect is imputed to the district. In order for such knowledge of the architect to be chargeable to the district, though not actually communicated to it, the information must relate to some matter within the scope of the architect's authority. *See American Fidelity & Cas. Co. v. Backstrom,* 47 Wn.2d 77, 287 P.2d 124 (1955). Therefore, we must examine the authority of the architect as agent of the school district. The trial court's finding of fact No. 6 must stand or fall on the scope of that authority.

It is well established that an architect is not a general agent of his employer, and he has no implied authority to make a new contract for his employer or alter or modify an existing one. *Valley Constr. Co. v. Lake Hills Sewer Dist.,* 67 Wn.2d 910, 410 P.2d 796 (1966); *DeHoney v. Gjarde,* 134 Wash. 647, 236 P. 290 (1925); *Hurley v. Kiona-Benton School Dist. 27,* 124 Wash. 537, 215 P. 21 (1923); *Stimson Mill Co. v. Feigenson Eng'r Co.,* 100 Wash. 172, 170 P. 573 (1918); *Schanen-Blair Co. Marble & Granite Works v. Sisters of Charity of the House of Providence,* 77 Wash. 256, 137 P. 468 (1914).

Generally, the authority of an architect is established in the contract between the owner and the contractor, although any expression of assent by the owner to the contractor can serve to create, limit, or enlarge the authority. The only evidence as to the architect's authority to speak or act for the district is contained in the contract between plaintiff and the defendant district. The only provisions of the contract pertaining to this issue are:

ARTICLE 9. *The Architect's Status.*—The Architect shall have general supervision and direction of the work. He is the agent of the District only to the extent provided in the Contract Documents. He has authority to

stop work whenever such stoppage may be necessary to insure the proper execution of the Contract.

ARTICLE 25. *Changes in the Work.*—The District, without invalidating the Contract, may order extra work or make changes by altering, adding to or deducting from the work, the Contract Sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, *no extra work or change shall be made unless in pursuance of a written order from the District signed or counter-signed by the Architect, or a written order from the Architect stating that the District has authorized the work or change,* and no claim for an addition to the contract sum shall be valid unless so ordered.

The value of any such extra work or change shall be determined in one or more of the following ways:

(a) By estimate and acceptance in a lump sum.

(b) By unit prices named in the contract or subsequently agreed upon.

(c) By cost and percentage or by cost and a fixed fee.

If none of the above methods is agreed upon, the Contractor, provided he receives an order as above, shall proceed with the work. In such case and also under case (c), he shall keep and present in such form as the Architect may direct, a correct account of the cost, together with vouchers. In any case, the Architect shall certify to the amount, including reasonable allowance for overhead and profit, due the Contractor. Pending final determination of value, payments on account of changes shall be made on the Architect's certificate.

Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the drawings and specifications the contract sum shall be equitably adjusted upon claim by either party made within a reasonable time after the first observance of the conditions.

ARTICLE 26. *Claims for Extras.*—If the Contractor

claims that any instructions by drawings or otherwise involve extra cost under this contract, he shall give the Architect written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to .execute the work, *and the procedure shall then be as provided for changes in the work.* No such claim shall be valid unless so made.

(Italics ours.)

It is clear that plaintiff was told by the contract terms that the architect was not authorized to act for the district in committing any cost increases and it is apparent that the changes have increased the costs of the district by over 100 per cent. A public body operates within rather stringent budget restrictions and must be given the opportunity to voice approval or disapproval of changes in the contract which will affect the funds. Thus we find that the contract requires *notice to the district* and *approval by the district* before it is obligated for changes in the contract. The school board is responsible for the financial management of the district. We need not decide as to the validity of a delegation of this management authority and responsibility as such delegation is a matter which is not before us. The board has expressly told plaintiff that the architect has no such authority.

It has been stated that the requirements of notice to the owner of claimed changes or "extras" has four purposes: (1) to keep the owner informed as to his costs; (2) to protect the owner from having to pay for work he does not want; (3) to insure that the work has been ordered; (4) to constitute evidence that the work is, in fact, extra. 47 Calif. L. Rev. 645, 654 (1959).

These purposes are particularly important to a public body. The requirement of a writing as to such claim may be waived, as the court found to be a fact herein, but notice and the opportunity of the school board to decide whether it is to commit funds over and above the contract price is essential. Of course, the limited (express) authority of the architect can be enlarged by the usual rule relating to apparent and incidental authority and there can be in-

stances wherein the conduct of the board could estop it from denying authority of its architect, but such expansion of the architect's authority is not claimed or shown by the plaintiff.

The only testimony in the record relating to this issue appears in the testimony of Norval Lindelof, president of plaintiff corporation:

Q. Do you know whether or not the school district was ever notified of this fact, that the hardpan was lower than indicated on the plans? A. Yes, there was a member of the school board used to stop by. Q. How many times did he stop by? A. When I was there, he seemed to stop at the first part of the job every night or every other night the times I was there. Q. Did you ever notify him of the fact that the elevations shown on the diagram were different than those found at the site? Did you ever talk with him? A. Well, yes, I talked with him but not after we started this. Q. No, after you realized there was a shortage. A. I never talked to him. In fact, he wasn't involved. We dealt with the architect; he's their representative. Q. And you never made any attempt to contact the school board, did you? A. No.

Thus, if plaintiff is to prevail it must show that the architect was, in some manner, authorized to bind the district. The record is clear, however, that the architect in fact had no such authority.

In spite of this lack of authority, the majority apparently justifies its conclusion by emphasis on the concluding paragraph of article 25, *supra,* which permits either party to claim an equitable adjustment of the contract price if conditions below the surface of the ground vary with those indicated in the contract specifications. The majority reads that paragraph as being independent of the remainder of article 25, and thus construes the operative effect of the agreement as follows: Should the contractor believe the subsurface condition to be at variance with the representation made during the bid stage, he need only so notify the architect, proceed with the work under the alleged changed condition, and then seek quantum meruit recovery for his additional labor.

If such interpretation is correct, then we have sprung a trap on the unwary public administrator. Articles 9, 25 and 26 of the contract quite explicitly limit the authority of the architect and spell out the procedure by which changes in the contract can be made. These provisions spell out protection to the district, as is their unmistakable intent, from incurring increased costs without its knowledge or consent.

I fail to see any distinction between changes in the performance of the contract by the contractor which arise due to a change in conditions and changes in performance occasioned by alteration in the plans, specifications, or scope of the work. In either case, there is an alteration of the original contract with a corresponding alteration in costs. The underscored portions of articles 25 and 26 must be read together and the concluding paragraph of article 25 should be construed in harmony therewith. It is quite clear from a reading of the entire contract that the district intended that it be given notice of any proposed changes so that it would have an opportunity to evaluate the possible alternatives and elect the most desirable solution in terms of time, economy, and effect on the total project.

Since no notice was given to the district, and the architect was not authorized to waive the requirement of notice, I would reverse the judgment.

HAMILTON, HALE, and McGOVERN, JJ., concur with NEILL, J.