[No. 42335. En Banc. August 17, 1972.]

OCEAN SPRAY CRANBERRIES, INC., *Respondent,* v. TERRENCE E. DOYLE *et al., Appellants.*
TERRENCE E. DOYLE *et al., Appellants,* v. OCEAN SPRAY CRANBERRIES, INC., *et al., Respondents.*

*Stritmatter & Stritmatter*, by *Paul L. Stritmatter*, for appellants.

*Short, Cressman & Cable*, by *John H. Strasburger, Roger J. Crosby*, and *James W. Cook*, for respondents.

HUNTER, J.—This is an appeal from a judgment of the Superior Court for Grays Harbor County in two consolidated cases, granting, in the one case, a writ of restitution for unlawful detainer and, in the other, denying the requested relief resulting from the asserted unlawful sale of railroad property and unlawful abandonment of a railroad line.

The plaintiff (respondent), Ocean Spray Cranberries, Inc. (hereafter referred to as Ocean Spray), operates a cannery at Markham, Washington, which is serviced by a railway track from south Aberdeen. In 1942, the plaintiff's predecessor, Cranberry Canners, Inc., leased certain property from the Northern Pacific Railway Company, the predecessor of Burlington Northern, Inc. (respondent), and a trackage agreement was entered into providing for railway shipping facilities at the cannery. The cost of the original trackage was divided between the railroad and the cannery. From 1942 to 1967, the railway track ended approximately 800 feet beyond and south of the cannery. On November 15, 1963, the defendant (appellant), Terrence E. Doyle, d/b/a Doyle Shake Co., leased from the Northern Pacific Railway Company, a small parcel of the railroad

right-of-way south of the cannery and adjacent to the railway track. The lease, which provided for an annual rental of $20, contained the following pertinent provisions:

9. . . . either party may at any time terminate this lease thirty (30) days after written notice to the other party of termination. . . .

10. Upon the termination of this lease pursuant to the provisions of paragraph 9, Lessee . . . shall remove its property and improvements from said premises and fill all excavations thereon . . .

. . .

12. Railway Company reserves the right at any time to change the grade of its tracks without compensation to Lessee, and in the event such change is made . . . Lessee shall bear all expense necessary to adapt said premises and improvements thereon to the changed conditions.

13. Railway Company reserves the right . . . to construct or permit the construction of additional facilities on said premises for the benefit of or for the purpose of serving Railway Company or other lessees of Railway Company and also the right to enter upon said premises for the purpose of constructing, reconstructing, repairing, operating, relocating, and removing said facilities.

14. This lease is granted subject to permits, leases, and licenses, if any, heretofore granted by Railway Company affecting said premises.

Doyle subsequently erected a shake drying shed on the property and an access ramp to the adjacent track. Mistakenly, however, the shed was erected one-half on the property leased from the railroad and one-half on adjacent property which was not owned by the railroad.

In 1966, Ocean Spray decided to expand and modernize its cannery. Negotiations were conducted in 1966 and 1967 with the railroad for the lease of additional property, and for new trackage and track relocations. On April 3, 1967, Doyle was notified by the railroad that his lease was terminated pursuant to the 30-day notice provision. Thereafter, the railroad removed about 1,000 feet of trackage, including the track which extended south of the cannery and which

was used by Doyle. Doyle, however, did not vacate the leased property but relocated the ramp siding previously used for access to the removed tracks and rebuilt a new ramp siding on another track which extended a short distance south of the cannery. In 1969, Ocean Spray purchased from a third party the property on which one-half of Doyle's shake drying shed had been erected and, thereafter, purchased from the railroad the property described in the terminated lease to Doyle. Ocean Spray also notified Doyle that he would have to vacate.

In 1970, Ocean Spray adopted plans to enclose the area between its old and new buildings, in order to comply with the Federal Food and Drug Administration inspection deficiency reports. The result of the plans would be to close off access to any rail service south thereof. When Doyle failed to vacate the property upon request, Ocean Spray commenced its unlawful detainer action. Subsequently, on April 2, 1971, Doyle filed a separate action as plaintiff (appellant), against both Ocean Spray and Burlington Northern, Inc. (respondents), alleging that the property described in the terminated lease had been unlawfully transferred by the railroad to Ocean Spray; that the track removed in 1967 had been unlawfully abandoned; and that Doyle was entitled as a matter of law to railroad service at the location of his shake drying shed. Doyle's complaint requested that the court declare the conveyance from the railroad to Ocean Spray to be unlawful and null and void, and that the court issue a mandatory injunction requiring the railroad to furnish rail service to Doyle at the site of his former lease. The complaint also asked for damages, attorneys' fees and costs. As to Ocean Spray's action for restitution, it is Doyle's contention that Ocean Spray is without legal title and right of possession to the property upon which its right of action is premised. The two cases were consolidated for trial.

The trial court granted judgment in favor of Ocean Spray, and Doyle was given 30 days to remove his shed and

to vacate the property. The relief requested in Doyle's complaint was denied. Doyle appeals.

The basic determinative factor in this case is whether the abandoned railway tracks were in fact "main line" or "branch line" tracks, or whether they were "spur" tracks. If, as contended by Doyle, the tracks in question were main line or branch line tracks, the approval of the Interstate Commerce Commission was required prior to their abandonment, under 49 U.S.C. § 1(18) and (20), which read, in pertinent part:

> No carrier by railroad subject to this chapter shall . . . abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment.

49 U.S.C. § 1(18).

> The Commission shall have power to issue such certificate as prayed for, or to refuse to issue it, or to issue it for a portion or portions of a line of railroad, or extension thereof, described in the application, or for the partial exercise only of such right or privilege, and may attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require. From and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate and proceed with the construction, operation, or abandonment covered thereby.

49 U.S.C. § 1(20). If, on the other hand, the tracks were spur tracks as contended by Ocean Spray and Burlington Northern, Inc., prior approval from the Interstate Commerce Commission was not required under 49 U.S.C. § 1(22), which provides:

> The authority of the Commission conferred by paragraphs (18) to (21) of this section, both inclusive, *shall not extend to the* construction or *abandonment of spur,* industrial, team, switching, or side *tracks,* located or to be located wholly within one State . . .

(Italics ours.) It is admitted by the railroad that no application was filed with the Interstate Commerce Commission for authority to abandon the tracks in question or for a certificate of public convenience and necessity. Doyle, however, did complain to the Interstate Commerce Commission, which complaint was rejected.

■ The question of whether a particular stretch of rail is a line of railroad or is an extended line of railroad, or is a spur, industrial, team, switching or side track, is a mixed question of law and fact to be determined judicially rather than administratively. *New Orleans Terminal Co. v. Spencer*, 366 F.2d 160 (5th Cir. 1966), *cert. denied*, 386 U.S. 942 (1967); *United States v. Idaho*, 298 U.S. 105, 80 L. Ed. 1070, 56 S. Ct. 690 (1936). In *New Orleans Terminal Co. v. Spencer, supra*, the court, in defining spur, industrial, team, switching or side track, stated the following at page 166:

> If . . . the trackage is used in the loading, reloading, storage and switching of cars incidental to the receipt of shipments by the carrier or their delivery to the consignee, then such trackage is "spur, industrial, team, switching or side tracks" and as such, not under Commission jurisdiction.

In the instant case the trial court found that the tracks in question were *spur* tracks and not main line or branch line tracks.

■ It is well established that findings of fact made by the trial court which are supported by substantial evidence will not be disturbed on appeal. *Lindbrook Constr., Inc. v. Mukilteo School Dist. 6*, 76 Wn.2d 539, 458 P.2d 1 (1969); *Ritzschke v. Department of Labor & Indus.*, 76 Wn.2d 29, 454 P.2d 850 (1969); *Nielson v. King County*, 72 Wn.2d 720, 435 P.2d 664 (1967); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The record in the instant case shows that the tracks in question were used for loading, reloading, storing, and switching incidental to the receipt of shipments by the railroad almost exclusively from Ocean Spray and, infrequently, from Doyle, or for their delivery of shipments to Ocean Spray, and that they

were not used for through or line haul service. The record further shows that the tracks did not include pole line communications systems, block signal systems, public facilities, or regularly scheduled switching train service.

We are satisfied that there is substantial evidence and competent testimony in support of the finding that the tracks were spur tracks. Therefore, under the exemption contained in 49 U.S.C. § 1(22), there was no need for the railroad to obtain prior approval from the Interstate Commerce Commission for the abandonment of its spur tracks.

It is contended by Doyle that the sale of the railroad property to Ocean Spray was void because the railroad had not obtained the authority of the Washington Utilities and Transportation Commission for the sale as required under the provisions of RCW 81.12, and, specifically, RCW 81.12.020 and RCW 81.12.030, which provides that a *public service company* must obtain such authority for the sale of any of its properties *which are necessary or useful in the performance of its duties to the public,* and that without such authority the sale is void.

RCW 81.12, pertaining to transfers of property, is inapplicable to the present case. RCW 81.12.010 expressly provides:

> The term "public service company," as used in this chapter, shall mean every company now or hereafter engaged in business in this state as a public utility and subject to regulation as to rates and service by the utilities and transportation commission under the provisions of this title or Title 22: *Provided, That it shall not include common carriers subject to regulation by the Interstate Commerce Commission* . . .

(Italics ours.) Burlington Northern, Inc. and its predecessor, the Northern Pacific Railway Company, at all times relevant to this action, have been subject to regulation by the Interstate Commerce Commission which has jurisdiction of such common carriers under 49 U.S.C. § 1, *et seq.* The railroad, therefore, was not a "public service company" as defined by the act, and it is excluded from the operation

of RCW 81.12 as it comes within the exception contained in RCW 81.12.010, since it is subject to regulation by the Interstate Commerce Commission. Furthermore, the property sold to Ocean Spray was not "necessary or useful in the performance of the railroad's duties to the public" since the property was not used by the public and was completely landlocked and without public access. As such, the property did not fall within the provisions of the statute. The contention of Doyle that the railroad comes under the provisions of RCW 81.12 requiring the authority of the Washington Utilities and Transportation Commission for the sale of its property to Ocean Spray, is, therefore, without merit.

Doyle contends that the sale of the railroad property to Ocean Spray constituted an undue and unreasonable preference, in violation of 49 U.S.C. § 3 (1), and RCW 81.28.190. We disagree.

█ The record shows that at the time of the termination of the lease, Doyle's rights to the use and access of the railroad spur were dependent upon the terms of the lease. When the lease was cancelled, Doyle had no title to any property adjacent to the track; he had no legal right of access to the track; and he did not have any rights as a shipper which would come within the purview of the federal code or state statute which prohibit undue or unreasonable preference. But even so, the trial court found that there was no undue preference; that Doyle was treated fairly; and that the railroad had made a good faith effort to negotiate a new lease with Doyle. The record shows that the offer of a new lease was left open for more than a year prior to the sale of the property in question to Ocean Spray and that the new lease offered was comparable to the original lease. We are satisfied that there is substantial evidence to support the trial court's findings.

█ Doyle next contends that the conveyance of the property from the railroad to Ocean Spray is void as against public policy. We find this contention to be without merit under the facts in the instant case since the rights of

the public are not affected as there was no public access to the tracks at the time of the conveyance to Ocean Spray, and there were no shippers who had legal access to the tracks other than Ocean Spray.

■ Doyle assigns error to the trial court's finding that Ocean Spray had acquired ownership of the property on which one-half of his shed had mistakenly been erected. Doyle, however, offers no argument in support of his assignment; consequently, we will not consider it. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962); *Johnson Serv. Co. v. Roush*, 57 Wn.2d 80, 355 P.2d 815 (1960); *State v. Frye*, 53 Wn.2d 632, 335 P.2d 594 (1959).

From this record we conclude that Ocean Spray lawfully acquired title to all of the property upon which Doyle's drying shed was located and that Doyle's presence on the property is either as a tenant by sufferance or as a trespasser. The judgment granting restitution to Ocean Spray of the property described in the terminated lease was therefore proper.

■ The trial court found that Doyle had no standing to institute his action. The record clearly supports this finding. Doyle is not an abutting property owner on the portion of the tracks which were abandoned. His lease was cancelled according to its terms. He has no right of access to the tracks in question and there is no public access to the tracks. Doyle has no special or peculiar interest which has been aggrieved any different in kind or degree than that of the general public, and he is, therefore, without standing to maintain his action. *See Capitol Hill Methodist Church v. Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958); *L. Singer & Sons v. Union Pac. R.R.*, 311 U.S. 295, 85 L. Ed. 198, 61 S. Ct. 254 (1940), and cases cited therein.

In view of our disposition of this case, it is not necessary to consider the remaining contentions relating to Doyle's action against the railroad and Ocean Spray.

The judgment is affirmed.

HAMILTON, C.J., ROSELLINI, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.

FINLEY, J. (concurring)—I am convinced this is a simple landlord and tenant case. The tenant has not proved the landlord has done anything that he was not entitled to do. Consequently, the tenant has not established a cause of action. On this basis I concur in the result of the majority opinion; namely, affirmance of the trial court's judgment.

Petition for rehearing denied November 8, 1972.