IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30412-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ENRIQUE GONZALEZ MARTINEZ, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, J. — Enrique Gonzalez Martinez appeals his conviction of third degree rape, arguing that his inculpatory statements made to police should have been suppressed because of the time and events that transpired between the initial advisement of his *Miranda*[1] rights and the time of his admissions and recorded statement. The record supports the trial court's finding of his knowing, voluntary, and intelligent waiver of those rights. We affirm.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

FACTS AND PROCEDURAL BACKGROUND

At about 2 a.m. on July 9, 2011, Detective Jeff Ward traveled to the home of Enrique Gonzalez Martinez[2] with Officer Ron Wilson to arrest Mr. Martinez on charges of third degree rape. The victim, an adult woman, had been visiting her grandmother the prior evening when Mr. Martinez, a friend of her grandmother's, asked her to drive him to get some beer. While taking him on the errand, the victim claimed that Mr. Martinez fondled her breasts and digitally penetrated her vagina over her continuing objections and resistance. After Mr. Martinez left the grandmother's home, the victim, crying and upset, revealed what had happened. She and her grandmother traveled to the hospital, where a sexual assault examination was conducted and police were called.

When the officers arrived to arrest Mr. Martinez, Detective Ward mentioned the name of the victim and asked if Mr. Martinez knew her; Mr. Martinez replied that he did. While getting into the patrol car, Mr. Martinez asked the officers, "[I]s this because she said I raped her?" Report of Proceedings (RP) at 26. Detective Ward had said nothing to elicit this comment and did not respond.

The officers' first stop with Mr. Martinez was the hospital, where, pursuant to a warrant, Mr. Martinez's DNA (deoxyribonucleic acid) and fingernail clippings were taken. En route to the hospital, Detective Ward read Mr. Martinez his *Miranda* rights.

---

[2] Mr. Gonzalez Martinez refers to himself as Henry Martinez.

The detective did not otherwise speak to Mr. Martinez while on the ride to, or while at, the hospital.

Upon leaving the hospital, the officers transported Mr. Martinez to the jail for booking. No questioning took place during the transport. As Detective Ward was collecting Mr. Martinez's property at the booking window, he asked if Mr. Martinez knew why he was being arrested. Mr. Martinez responded that it was because he was "stupid." RP at 28. When Detective Ward asked him what he meant, Mr. Martinez said that he had touched the victim's genitals and kissed her breasts.

After Mr. Martinez made these statements, Detective Ward asked if he wanted to give a recorded statement and Mr. Martinez answered "yes." *Id.* At the outset of recording Mr. Martinez's statement, the detective re-read him his *Miranda* rights and Mr. Martinez stated he understood his rights and wanted to talk. He answered questions and admitted to sexual contact, specifically digital penetration of the victim's vagina. He claimed the conduct was consensual. Between Detective Ward's initial contact with Mr. Martinez at the Martinez home and the beginning of the recorded statement only 40 minutes, approximately, had elapsed.

At the CrR 3.5 hearing on the admissibility of the statements, Mr. Martinez's lawyer did not dispute the 40-minute time frame but argued that 40 minutes was enough time, together with the intervening events, to vitiate the effectiveness of the *Miranda* warning. The trial court rejected the argument and concluded that the "time lapse

3

between the initial advice of rights and questions at the jail did not require another advice of rights" and that "the defendant's statements to Detective Ward . . . and the recording thereof, were the product of the defendant's knowing, voluntary, and intelligent waiver." Clerk's Papers at 70. Mr. Martinez was later convicted in a jury trial. He appeals.

## ANALYSIS

Mr. Martinez argues that the lapse of time and intervening circumstances required that Detective Ward re-administer *Miranda* warnings before questioning him at the booking window, that the admissions he made at the booking window tainted his subsequent recorded statement, and that the error was not harmless. The relevant facts are all undisputed; at issue are only the trial court's conclusions of law. Mr. Martinez argues that the passage of time, together with the change in locations from his home, to the hospital, and to the jail, was inherently coercive and would have caused him to forget about the initial *Miranda* warnings.

When a person is subject to custodial interrogation (undisputed here), any statements made are deemed to be compelled in violation of the Fifth Amendment unless the State can show that before the statements there was a knowing, voluntary, and intelligent waiver of the defendant's Fifth Amendment privilege. *State v. Sargent*, 111 Wn.2d 641, 648, 762 P.2d 1127 (1988). The State must show a waiver of *Miranda* rights by a preponderance of the evidence. *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27

4

(2007). Statements obtained in violation of the Fifth Amendment must be suppressed. *State v. Warner*, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).

To determine whether a defendant has knowingly, voluntarily, and intelligently waived his rights, the court must examine the totality of the circumstances under which the waiver was made. *State v. Parra*, 96 Wn. App. 95, 99-100, 977 P.2d 1272 (1999). An express oral or written waiver is not necessary to establish a valid waiver. *State v. Rupe*, 101 Wn.2d 664, 678, 683 P.2d 571 (1984). However, a waiver cannot be inferred from the fact that the defendant ultimately confessed after being advised of his rights. *State v. Terrovona*, 105 Wn.2d 632, 646, 716 P.2d 295 (1986). An implied waiver may be found where the defendant is informed of his *Miranda* rights, understands them, and chooses to volunteer information in the absence of duress, promise, or threat. *Id.* at 646-47. "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda*, 358 U.S. at 476.

The lapse of time between the administration of *Miranda* warnings and the suspect's statement is one factor considered in determining the validity of the waiver. *United States ex rel. Patton v. Thieret*, 791 F.2d 543, 547-48 (7th Cir. 1986). No rigid rule exists relating to *Miranda* and the passage of time or a break in events. *Medeiros v. Shimoda*, 889 F.2d 819, 824 (9th Cir. 1989). "[Once] a defendant has been adequately and effectively warned of his constitutional rights, it is unnecessary to give repeated

5

recitations of [*Miranda*] prior to taking of each separate in-custody statement." *State v. Vidal*, 82 Wn.2d 74, 78, 508 P.2d 158 (1973).

Mr. Martinez directs our attention to *United States v. Gillyard*, 726 F.2d 1426, 1427 (9th Cir. 1984). In that case the defendant, a postal carrier, was questioned at work by postal inspectors about the theft of some checks from the mail. He was asked if he would be willing to take a polygraph test and said that he would. About a month later, the inspectors returned and the defendant again agreed to provide the polygraph and was taken to the site where it would be administered. There, he was introduced to the polygraph examiner. Before the examination began, the polygraph examiner read him his *Miranda* rights. The examination was conducted and, when it was completed, the examiner informed him that the examination indicated he was being deceptive. After speaking with the defendant further, the examiner left the room and the postal inspectors returned. The inspectors questioned him for about another hour, without separately informing him of his rights. At no point in the entire process was he told he was under arrest. Eventually—and some two and a half hours after the polygraph examiner had read the defendant his rights in anticipation of the polygraph—the defendant signed a written confession.

The district court suppressed the confession, finding that "the major problem in the government's case was that the inspectors obtained the waiver of Gillyard's rights by telling him that he would only be subjected to a polygraph test." *Id.* at 1428. The Ninth

Circuit upheld the suppression on appeal, concluding that while "[t]he district court might have determined that under the totality of the circumstances the defendant had properly waived his *Miranda* rights," it did not find a waiver, and "[b]ased on the record we cannot say that the district court's decision was clearly erroneous." *Id.* at 1429-30.

The circumstances here are different from *Gillyard* in every material respect. Mr. Martinez's dealings were with Detective Ward throughout. He was told at the outset that he was under arrest. There was nothing about the stop at the hospital that would have confused him about Detective Ward's role or purpose. The passage of time was shorter. And of course here, the trial court determined that under the totality of the circumstances Mr. Martinez *did* properly waive his *Miranda* rights before making his inculpatory statement at the booking window.

This case is much more like the many cases in which courts have found that the passage of time or change in circumstances has not required a re-administration of *Miranda* rights. *See, e.g., Vidal*, 82 Wn.2d 74 (defendant transferred by car from Wallace, Idaho, to Tacoma, Washington, need not be re-Mirandized for each in-custody statement); *State v. Rowe*, 77 Wn.2d 955, 959, 468 P.2d 1000 (1970) (statements made within 48 hours after *Miranda* cannot be said to have been made without knowledge of his rights); *Thieret*, 791 F.2d at 548 ("The passage of forty minutes does not require that the *Miranda* warnings be given again.").

7

The passage of time and changes in location did not require that the *Miranda* warnings be re-administered. Mr. Martinez's statements at the booking window were made following a valid waiver of his rights and were properly admitted.

Having rejected Mr. Martinez's first argument, we need not reach his second and third, both of which depend on a finding that his constitutional rights required suppression of his statements made during booking.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Brown, J.

8